## Misto Estate

*George I. Puhak*, for accountants.

*Martin O'Donnell*, for claimant.

*Louis G. Feldman*, contra.

SELECKY, P. J., February 18, 1960.—This matter comes before the court upon claim of Mary Kalanevich for a bank account which had been in the name of decedent and herself in the First National Bank of Freeland, and which has been included in the assets of the estate of Susan R. Misto, deceased.

The testimony of Eugene Bogdon, cashier of the First National Bank of Freeland, revealed that, after August 14, 1956, the account in question, account no. 345, was in the name of Susan R. Misto and Mary Kalanevich, as joint tenants with right of survivorship, with a proper signature card and contract attached thereto.

Subsequent to August 14, 1956, Susan R. Misto was declared an incompetent and the Traders Bank & Trust Company, Hazleton, was named guardian of her estate. On February 5, 1958 ,the Traders Bank and Trust Company, as such guardian, withdrew all the funds from said bank account no. 345 in the First National Bank of Freeland, then in the amount of $1,320.27.

This fund was subsequently accounted for in the final account of said guardian of the estate of Susan R. Misto, an incompetent, after her death, and specifically earmarked: "2/6/58 First National Bank of Freeland, Account No. 345 $1,320.27." Likewise, the first and final account of the executors of the estate of Susan R. Misto, deceased, shows a charge as follows: "First National Bank of Freeland, Pa., Account No. 345, $1,320.27."

The question is raised as to the authority of the guardian of the estate of said incompetent to withdraw said funds from the joint account to the exclusion of the person named as joint tenant. The restricted authority of such a guardian is defined in Riley Estate, 1 Fid. Rep. 586 (1949), as follows, at page 591:

"The guardian of the estate of an incompetent is a mere bailiff or stakeholder of the assets of the estate; the estate is properly regarded as being in the possession of the court which exercised its power to so appoint the guardian [citing cases]. The guardian, as guardian, is without discretion on the question of keeping or redeeming the bonds [herein the name of

the incompetent 'or' another person, a minor child], unless affirmatively required by law to do one or the other [citing cases].

"During his competency the ward in the exercise of his discretion placed certain of his property in a co-ownership form at least temporarily beyond the reach of his creditors. There is no allegation or contention that this was fraudulently done. Should we now re-exercise a discretion on behalf of the ward so as to defeat the ward's election in this regard? We do not think so. We are not reconsidering a wrongful act of the ward, and though the creditors' claims admittedly be meritorious we will not direct the guardian to do that which the ward himself would not have done were he now competent. The complaint that if the bonds are not sold they will, at the incompetent's death, become the absolute property of his minor children is precisely what we take the incompetent to have intended . . .".

Section 644 of the Incompetents' Estates' Act of February 28, 1956, P. L. (1955) 1154, 50 PS §3644, provides as follows:

"Section 644. Distributions of Income and Principal During Incompetency. — All income received by a guardian of the estate of an incompetent, in the exercise of a reasonable discretion, may be expended in the care and maintenance of the incompetent without the necessity of court approval. The court, for cause shown, may authorize or direct the payment or application of any or all of the income or principal of the estate of an incometent for the care, maintenance or education of the incompetent, his spouse, children or those for whom he was making such provision before his incompetency, or for the reasonable funeral expenses of the incompetent's spouse, child, or indigent parent. In proper cases, the court may order payment of amounts directly to the incompetent for his mainte-

nance or for incidental expenses and may ratify payments made for these purposes."

In Young v. Dollar Savings Bank, 25 D. & C. 80 (1935), decided under a similar act, Act of June 13, 1836, P. L. 589, sec. 10, 50 PS §753, a bank account was created in tentative trust form by the incompetent before she was declared incompetent. Thereafter her guardian notified the bank that the account was to be held for her "legal representatives". The court held that after her death the cestui que trust became the sole and unqualified owner of the account. The court stated, page 89:

". . . we are to determine to what extent, if any, guardians are clothed with discretion to review and adjust or repudiate the acts of their wards which have been done prior to the adjudication."

And, at page 92:

"We have considered the general nature and character of the savings account in question as pointed out by the defendant bank. We recognize it to be, as we have said, one of those accounts, ever increasing in number, where the depositor places his money in a way in which he can use it if he needs it or wants it, but where it, or the unused balance thereof, will pass to a designated person at his death without the expense and inconvenience of administration. It is a creature of the mind of the depositor and the exhibition of his will. As such it passes with other estate to the guardian for the purposes, and only for the purposes, which the statute has enumerated. In the total absence of a power of discretion bestowed by statute the only right concerning the same which is acquired by the guardian is to preserve the account in status quo, protecting it against any and all emergencies which might tend to deplete or destroy it, and using it, or any part of it, only by the approval of the court, when it becomes necessary to do so to provide for the support and main-

tenance of the ward or his family or to educate his minor children. None of these exigencies was present in the instant case."

An examination of the testimony and all the files in this estate definitely shows that there was no necessity at any time on the part of the guardian of the estate of the incompetent to request his court for permission to use the funds in the joint bank account, there being sufficient assets in the estate to provide for the ward's support and maintenance, and being single, she had no legal obligations to a family or children. The guardian's unauthorized withdrawal of these funds disturbed the status quo, the carefully planned dispositive scheme of the person who later became incompetent, which it had no right to do any more than it had any right to revoke any will of the incompetent (and she had one) or to change any beneficiaries on her insurance policies, all very personal rights reserved unto the incompetent herself, which no guardian can usurp.

Under the circumstances of this case the Traders Bank & Trust Company, as guardian of the estate of Susan R. Misto, an incompetent, inadvertently withdrew the funds from the joint bank account in the First National Bank of Freeland, in the names of Susan R. Misto and Mary Kalanevich, as joint tenants with the right of survivorship. It would have been proper to place a restraining order on said bank account to preserve its status quo and hold it so for any exigencies that might arise, when the funds could have been used for the purposes stated in the statute, upon application to and approval of this court. Banks should refrain from allowing guardians of estates of incompetents to withdraw from such joint accounts without a proper court order.

Under the facts of the instant case, however, no particular harm has been done by the withdrawal of the funds from the joint bank account because they

have not been spent and have been properly earmarked in each accounting. Accordingly we enter the following

### Decree

That the executors of the estate of Susan R. Misto, deceased, pay over to Mary Kalanevich the funds in their hands totaling $1,320.27, being the amount withdrawn from the joint bank account no. 345 in the First National Bank of Freeland, by the Traders Bank & Trust Company, as guardian of the estate of Susan R. Misto, an incompetent, and later distributed to the executors of the estate of Susan R. Misto, deceased.